Scott, adm'r, v. Bennett.

JOSEPH SCOTT, administrator of SAMUEL SCOTT, deceased, impleaded, &c. appellant, v. JOSEPH BENNETT, appellee.

*Appeal from St. Clair.*

A. being about to purchase of B. a certain tract of land, discovered, upon examining the title, that C. had recovered a judgment against B. and another individual, for a large amount which had been partially paid. He refused to purchase, unless C. would release the land from the lien of the judgment, and so informed C. who agreed to release it, and accordingly executed the following instrument: "This is to certify that I, Joseph Scott, administrator of Samuel Scott, deceased, do relinquish all claim, by virtue of a judgment obtained against R. M. Lacroix, to a certain tract of land formerly belonging to Henry Stout, and now belonging to R. M. Lacroix, and about to be traded to Joseph Bennett. Belleville, February 9. Joseph Scott, Administrator." Confiding in C.'s promise to release, A. purchased and paid $2,000 in cash towards the purchase money, and one half thereof was immediately applied to the judgment aforesaid. About one thousand dollars remaining due on said judgment, C. caused an execution to be issued and levied on said land. On a bill being filed for an injunction, C, in his answer admitted the above facts, but alleged that, by an agreement made between the parties at the time of the execution of the above instrument, A. agreed, as a part of the consideration of the release, to pay towards said judgment, the sum of $500, &c. which he had failed to do. It was objected that the instrument was not a valid release, being without consideration, a seal and parties, &c. *Held,* that the instrument, though not technically a release, not being made for the benefit of any particular person, and not importing upon its face a consideration for want of a seal, still might, without the slightest encroachment upon even a technical rule of law, be averred and proved to have been made for the benefit of some one, and that there was, in fact, a consideration for its execution.

It is a familiar principle that evidence may be given to explain, but not to vary, add to, or alter a written contract. But if there is doubt and uncertainty, not about what the substance of the contract is, but as to its particular application, it may be explained and properly directed. For instance, a receipt for the payment of money may be explained. The consideration of a note, though expressed to be for value received, may be inquired into; and if made payable to one person, when another was intended, the holder may sue on it in his real name, alleging the mistake and prove it on the trial.

BILL IN CHANCERY for an injunction, &c. in the St. Clair Circuit Court, brought by the appellee against the appellant and others, and heard at the May term 1846, before the Hon. John D. Caton, who subsequently ordered a decree to be entered in vacation, making the injunction perpetual. Scott, one of the defendants, appealed to this Court.

The substance of the bill, answers and testimony in the case is set out in the Opinion of the Court.

*L. Trumbull,* for the appellant.

1. This is a bill for an injunction in the nature of a specific performance, and to entitle the party to such performance he must show a valid contract founded upon a sufficient consideration. The paper signed by Scott, is not such a contract. It is not under seal; it lacks parties and a consideration. Equity will not enforce a voluntary contract, much less will it supply defects in the execution of such a contract, and particularly where there is no allegation of consideration in the bill.

Every bill must contain in itself sufficient matters of fact, *per se,* to maintain the case of the plaintiff, and the answer or proofs cannot be resorted to to supply defects in the bill. *Harrison* v. *Nixon,* 9 Peters, 502, 503; *Boone* v. *Childs,* 10 do. 209; *Moore* v. *Hunter,* 1 Gilman, 328; 1 Story's Eq. Jur. § 433 and note; 2 do. § 706 *a,* 787, 793 *a;* 1 Fonb. Eq. 256 and 258, and notes; *Minturn* v. *Seymour,* 4 Johns. Ch. R. 497; *Coleman* v. *Sarrell,* 1 Ves. 52, 54; 4 B. & H. Dig. 36, "Consideration," § 1; *Ellison* v. *Ellison,* 6 Vesey, 662; *Tubman* v. *Anderson,* 4 Har. & McHen. 357, 362; *Chandler's Ex'r* v. *Hill,* 2 Hen. & Munf. 126; *Black* v. *Cord,* 2 Har. & Gill. 100; 1 B. & H. Dig. 81, § 37; *Tate* v. *Hilbert,* 2 Vesey, Jr. 117, 121. The release of Scott is also void for want of mutuality. *Parkhurst* v. *Van Cortland,* 1 Johns. Ch. R. 282; *Benedict* v. *Lynch,* Ib. 375.

2. If the paper signed by Scott was a valid release of his lien upon the land, then to avail himself of it, Bennett must have complied with the conditions upon which it was executed. That it was executed upon certain conditions, with which Bennett failed to comply is shown by the answer of Scott, and the testimony of complainant's own witnesses. *Bates* v. *Wheeler,* 1 Scam. 54; 2 Tuck. Com. 464; 1 Bac. Abr. 109.

3. The whole case shows a combination between Lacroix and Bennett to defraud Scott out of the amount due upon the

note. What motive could Lacroix have had, in accepting worthless notes from Bennett in discharge of Bennett's note? And what motive could Bennett have had in retaining $20, to pay the expenses of a law suit, and in taking bond with security from Lacroix to refund the amount paid, if they intended acting honestly with Scott?

He who asks equity must do equity. 4 B. & H. Dig. 44, § 40; 1 do. 104, § 53.

4. Lacroix honestly owes Scott, and ought to pay him. By compelling Bennett to pay Scott according to his agreement, at least the amount due upon the note, this will be accomplished in part, and injustice done to no one, as Bennett has bond and security to protect him. This will, in fact, be compelling Lacroix to pay his own debt, as the money ultimately comes from Lacroix.

Parol evidence of an alteration stipulated for at the time of making a contract and upon the faith of which the party executed, is admissible on the part of the defendant to defeat a party seeking the execution of the agreement. Distinction between the case of a defendant refusing, and a plaintiff seeking the execution of an agreement under such circumstances. *Clark* v. *Grant*, 14 Vesey, 519.

*W. H. Underwood*, for the appellee.

1. The written release affords the only evidence of its conditions and of the terms of said contract. *Lane* v. *Sharp*, 3 Scam. 573; *Francisco* v. *Wright*, 2 Gilman, 691; *Crosier* v. *Acer*, 7 Paige, 141; *Broadwell* v. *Broadwell*, 1 Gilman, 605, 607.

2. Scott should resort first to the property owned by Lacroix after the sale to Bennett, before he resorts to the property of Bennett. *Clawes* v. *Dickenson*, 5 Johns. Ch. R. 240; Fonblanque's Eq. 514, 515.

3. A Court of Equity will not relieve a party on account of a mistake in a matter of law. *Lyons* v. *Richmond*, 2 Johns. Ch. R. 60; *Hunt* v. *Rousmaniere's Adm'r*, 1 Peters, 12, 13, 14; *Mager* v. *Hutchinson*, 2 Gilman, 269.

4. An answer on oath is evidence so far as it is respon-

Scott, adm'r, *v.* Bennett.

sive to the allegations in the bill; but matter set up in avoidance must be proved by defendant.  *Hart* v. *Ten Eyck,* 2 Johns. Ch. R. 87–90, and note.

5.  It is said, that to make the release valid, it should be such as to enable either party to maintain a suit upon it. This rule is only applicable to contracts, and not to receipts or general releases.

6.  It is said that the release was given without any consideration, and is a *nudum pactum.*  The release was the inducement for Bennett to purchase the land, and Scott actually received part of the purchase money.  The case cited by appellee's counsel, from 4 Johns. Ch. R. was without any consideration proved, but one was alleged.  The case in 2 Hen. & Munf. 499, was where an indemnification bond was given to a person for *having* become security for his son; and the case in 4 Har. & Johns. 357, where the sale had been made *before* the naked agreement.

The Opinion of the Court was delivered by ·

PURPLE, J.*  Joseph Bennett, the appellee, filed his bill in Chancery in the St. Clair Circuit Court against Joseph Scott, administrator of Samuel Scott, deceased, Rene M. Lacroix, William R. Scott and Thomas Ward, alleging that in January, A. D. 1841, he was about purchasing of Lacroix a tract of land in said county, describing it.  That upon examining the title he found that the appellant, as administrator of Samuel Scott, deceased, had a lien upon the same by virtue of a judgment in his favor, rendered in the St. Clair Circuit Court on the 20th August, A. D. 1840, against Rene M. Lacroix and William R. Scott, for the sum of $2533·01, upon which $578·75 had been paid.  That he refused to purchase the said land unless Scott would release it from the lien of said judgment.  That about the 8th of January, 1841, in company with Lacroix, he called upon appellant and in-

---

*KOERNER, J. having been of counsel in this case, took no part in its decision. LOCKWOOD, J. did not hear the argument, &c.

formed him he was about to purchase the land, but was unwilling to do so unless the lien aforesaid could be removed. That before he consented to purchase, Scott agreed to release the land from said lien, and executed to appellee a writing in the following words and figures:

"This is to certify, that I, Joseph Scott, administrator of Samuel Scott, deceased, do relinquish all claim by virtue of a judgment obtained against R. M. Lacroix, to a certain tract of land formerly belonging to Henry Stout, and now belonging to R. M. Lacroix, and about to be traded to Joseph Bennett. Belleville, February 9th, 1841.

Joseph Scott, administrator."

That the tract of land in the said instrument of writing described, as formerly belonging to Henry Stout, is the same described in the bill, and which he was about to purchase of Lacroix. That confiding in the appellant's promises to release the land from the incumbrance of the judgment, he purchased it of Lacroix for $2500·00, paying two thousand dollars down, one thousand of which was paid by Lacroix to Scott upon the judgment before referred to, at the time. That Lacroix deeded the land to him on the 9th of February, 1841, and that he entered into the possession of the same. That since the purchase, Lacroix has paid to Scott the amount of the judgment against him and William R. Scott, except about one thousand dollars. That since his purchase of Lacroix, Lacroix had been the owner of real estate in Belleville, upon which said judgment was a lien worth the sum of $500·00, and that, in like manner, William R. Scott had had title to real estate in said town worth $75·00. That appellant had caused execution to be issued upon the judgment against said Rene M. Lacroix and William R. Scott, and levied upon the land so by him purchased of the said Lacroix, and advertised the same for sale.

The bill concludes with a prayer for a perpetual injunction restraining the sale, and for general relief.

Joseph Scott answers and admits, that Bennett was about to purchase the land at the time and in the manner stated in his bill, the existence of the judgment and the lien, and the

payment of $568·25 upon the judgment as alleged. That Bennett and Lacroix called on him about the 8th of February, 1841, and Lacroix informed him that Bennett was about purchasing the land, but was unwilling to do so unless he could have assurance that the judgment lien would be released. That Lacroix stated that Bennett was to pay him $2500, $2000 of which was to be paid down, $1000 of which Lacroix agreed to pay Scott on said judgment. That it was understood between the parties that Scott was to have execution issued on the judgment, and levied on William R. Scott's interest in his father's estate of which he died seized, known as the "homestead;" and that Lacroix agreed that, with the other $1000, he would purchase William R. Scott's interest in the "homestead" on the sale; which interest it was estimated would sell for about $400, and satisfy thereby so much of the said judgment. That Lacroix failed to pay the $1000 on the judgment, and only paid $568·25, and purchased William R. Scott's interest in the homestead with the balance of the $1000, and kept the other $1000 himself. That Lacroix stated that Bennett was to give his note for the balance of the purchase money, $500, to Lacroix, to be paid 1st October, 1841, with ten per cent. interest, which Lacroix agreed to place in his hands for collection, and when collected to be applied on the judgment; and that Bennett agreed also to pay the note to him (Scott,) to be applied on the judgment. That in consideration of these agreements, he executed the writing in the bill set out. That the next day, Bennett and Lacroix called on him, and Lacroix stated that he owed T. Harrison & Co. $100, and requested that he would let Bennett pay it to them in wood, and take Bennett's note for $400. That he assented, and the same was done; the note of $400 being made payable to Lacroix and due 1st October, 1841. That this note was placed in his (Scott's) hands for collection, and to be applied when collected on Scott's judgment, and that Bennett agreed to pay the same to him when due, for the purposes aforesaid. That after the note became due, Bennett paid him $100 on it. That afterwards, Bennett fraudulently paid the balance of the note to

Lacroix, knowing that the same remained under the contract in his, (Scott's,) hands, and obtained from Lacroix the receipt which he, (Scott,) had given Lacroix for the note. That he presented the receipt and demanded the note, which he, (Scott,) gave up under a mistaken notion of his rights. That the residue of the note has never been paid to him. He admits that the land mentioned in the writing is the same which Bennett was about purchasing of Lacroix. That he did purchase the same and pay down $2000, and Lacroix executed the deed as stated in the bill. Denies that the judgment is paid, except $1000; says there is still about $1300 due. That he does not know whether Lacroix and William R. Scott had title to real estate in Belleville as charged in the bill. He admits the execution and levy, as stated in the bill, but denies that Bennett ever requested him not to levy on the land in question. Avers that Bennett and Lacroix had both failed to comply with their agreement, and claims a legal right to proceed with his execution.

In an amended answer subsequently filed, Scott further states, that since filing his answer he has ascertained, that since the rendition of the judgment in his favor aforesaid, William R. Scott has not had title to real estate in Belleville, and that he has been informed and believes, that Lacroix had not title to any real estate in Belleville, upon which his judgment was a lien. That Lacroix purchased his after the sale made by him to Bennett, and sold the same in about three months to Minerva Orr, as whose property the same had since been sold on execution; and that he knows of no property, real or personal, of Lacroix or William R. Scott, subject to execution on said judgment; believes them both insolvent, and that he will lose his judgment unless he can make the same out of the lands levied upon. He again repeats, that Bennett expressly agreed to pay to him the balance of the purchase money of said land, $500·00, and that in consideration of the agreement only, he executed the release, or writing; and that the reason why the note of $500·00 was not made payable to him was, that

he wished the release of the judgment to depend upon the payment of the note, and he was unwilling to take Bennett's note without security when he had a lien on the land. That since filing his first answer, he has been informed and believes, that Bennett did not pay Lacroix the full amount of the note of $400, but received about $20 to defray the expense of a suit-which he expected with Scott on account of having paid the note to Lacroix. That what was paid was in notes upon third persons, and that he, (Bennett,) took a bond with security from Lacroix, as an indemnity against the payment of the note to him.

Accompanying this amended answer, Scott filed interrogatories to be answered by Bennett, requiring him to explain the manner in which the balance of the $400 note had been paid, and to disclose whether the same had not been discharged in notes upon third persons; whether a portion had not been retained, and for what purpose; and whether he had not taken a bond with security, as an indemnity against damages which he might sustain on account of the payment to him of said note.

William R. Scott answers generally, that he has little knowledge of the matters in controversy; he admits the existence of the judgment against Lacroix and himself, but denies, that since that time, he has had title to any real estate, as is therein stated.

The answer of R. M. Lacroix substantially admits all the material statements in the bill.

Bennett answers Scott's interrogatories, and states that he paid $330 of the balance due on the $400 note in notes, and overpaid the note in wood, and in a note paid to one John Wilson for $4·00, and an order to John Sargeant for $7·00, and that the excess was paid back by way of a set-off in a suit between him and S. B. Chandler as assignee of Lacroix. That the amount of notes paid was a little short of his note, about $20, as he thinks. That he did take an indemnifying bond from Lacroix, with S. B. Chandler as security, when he paid the note; a copy of the bond is set out. He further states that Lacroix called on him for the pay on

the note; showed him Scott's receipt for the same, which receipt is set out in Lacroix's answer, as follows: "Received of R. M. Lacroix, for collection, one note for three hundred and fifty three dollars, thirty three cents, payable the first day of October last. January 15, 1842. Joseph Scott." That Lacroix threatened to sue him on the note, and told him that he wanted the pay upon it to give to Chandler, to whom he was indebted. That from these statements, and the production of the receipt, to avoid being sued by Lacroix, and believing that the note still belonged to him, he paid it, taking the indemnifying bond out of abundant caution.

The evidence in the case consists of the depositions of Henry Smith and Rene M. Lacroix, one of the defendants in the Court below.

The substance of Smith's testimony is, that about the month of October, 1843, Scott informed him that he had got into a difficulty about a release, as he, (witness,) thought, about a judgment on some land, in consequence of the confidence he had reposed in Bennett. That it was talked and understood that the money which was coming from Bennett was to apply on Scott's judgment against Lacroix. That they offered to give a note payable to Scott, and he refused to take it in that way, for the reason that if he did so, he would have to credit that amount upon the judgment. That afterwards Lacroix offered to indorse the note and others over to him, (Scott,) and that he would not take them then. Witness thought that Scott stated that the reason why he released the judgment was, that he thought he could make the balance out of William Scott and Lacroix some other way. That he had not the "scrape" of a pen against Bennett; that the note was payable to Lacroix.

On his cross-examination, he stated further, that Scott at the same time said that Lacroix had promised the balance of the money to apply on the judgment; that this was the reason he gave the release. That Bennett and Lacroix were together, and Lacroix told Bennett to pay the money to him, (Scott,) and that he promised, when paid, to credit

it on the judgment. That the note referred to was the note Bennett gave for the balance of the purchase money of the land, for $500. That he understood from both parties that this note was afterwards taken up and two others given.

The substance of Lacroix's testimony is, that when he was about to sell the land to Bennett, he proposed to Scott that he would pay him $1,000 of the purchase money and give him Bennett's note for $500 more, retaining one half the money himself. That he would also buy William R. Scott's interest with part of the money. That Scott, at the time, had a judgment which was a lien upon the land. Bennett agreed to pay $2,500, $2,000 in cash and his note for the residue, if Scott would release the lien of his judgment; that this being agreed upon, he and Bennett closed the contract. Bennett paid the money, and gave his note to Lacroix for the balance. The deed was executed, and Scott took $1,030 of the money and Bennett's note, and gave a *receipt* releasing all claims against the land, and gave to him, (Lacroix,) a receipt for the note. This witness further stated as follows: "I must here remark that six hundred and about thirty dollars of this money received by said Scott, was received as redemption money on a house and lot Mr. Scott previously purchased, sold to satisfy said judgment, the property being mine and redeemed in my own name, and I getting a receipt for about $360, making in all about one thousand dollars Mr. Scott received in pay of that judgment."

That the $500 note was due eight months after date. Scott kept it fifteen 'or sixteen months, collecting in that time about $100. That a few days after the trade, Scott consented that Bennett should pay T. Harrison & Co. $100 of this note in wood, and give a new note of $400 for Scott's benefit; that he intended Bennett should pay this note to Scott; that Scott had ample time to collect it, and that he should not have thought of collecting it, if Scott would have given him credit for it. That he did not choose to stand between Bennett and Scott; that Scott would have held him responsible, if he had not collected the note from Bennett. That he believed that the property he then had subject to

the lien of the Scott judgment, and what he afterwards acquired, was more than sufficient to pay the balance of the judgment, and he did not believe Bennett would have bought the land unless Scott had released the lien of the judgment. That the $400 note was not assigned to Scott; that Scott received it for collection. That he considered that *he* had parted with his control over the note, and intended that Bennett should pay it to Scott. That he believed Bennett, on paying the note to him, (Lacroix,) got it from Scott on presenting the receipt which witness had held for the note. That he proposed to Scott to credit the note on the judgment, and believed that Scott refused.

On cross-examination, he stated that he believed that the release was given to Bennett, and understood that one of the conditions upon which the release was given was, that Bennett should pay the $500 note to Scott. That he, (witness,) received notes on other persons for the balance of the $400 note. That about $20 was retained by Bennett, because he thought he might be put to trouble by Scott. That it was one of the conditions, at the time of the trade, that Bennett was to pay the $500 note to Scott, and he was to indorse the same upon the judgment. That he owned lots No's 272 and 273 about three months, from March to June, 1841, and sold the same for $500.

On re-examination, he stated that he did not recollect hearing Bennett promise *positively* to pay the note to Scott, but he so understood it: that is, that he would pay to Scott as collecting it for his, (witness',) use. That all he knows relative to the manner in which Bennett obtained the note from Scott was derived from what Bennett told him.

Upon this state of facts, the Circuit Court entered a decree perpetually enjoining Scott from proceeding to enforce the collection of his judgment by execution against the land upon which the said execution had been levied, as referred to and described in the bill of the complainant in that Court.

The counsel for the appellant now contends, that the appellee's bill, upon its face, shows that he is not entitled to the relief he seeks. That it is in the nature of a bill for a specific performance, and that the appellee must set forth and

show a valid contract founded upon a sufficient consideration. That the paper signed by Scott is not such a contract. That it is not under seal, and lacks parties and a consideration, and that there is no allegation of consideration in the bill; and that in such cases equity will not supply defects or afford relief.

If all these premises in point of fact were true, the conclusions drawn from them would follow as a matter of necessity. A portion of the premises are correctly stated. The writing signed by Scott is not a technical release. It is not made for the benefit of any particular person by name. It is not under seal, and does not therefore, upon its face, import a consideration. But does it follow as a consequence that it may not be averred and proved that it was made for the benefit of some one, and that there was in fact a consideration? We think this may be done without the slightest encroachment upon even a technical rule of law.

It is a familiar principle, that you may give evidence to explain, but not to vary, add to, or alter a written contract. This is a general rule. Where parties have made an agreement in writing, Courts cannot alter, change, add to, or make a new one for them by parol. But if there is doubt and uncertainty, not about what the substance of the contract is, but as to its particular application it may be explained and properly directed. A receipt for the payment of money may be explained. The consideration of a new note, although expressed to be for value received, may be inquired into; if made payable to one person, when another was intended, the holder may sue on it in his real name, alleging the mistake and prove it on the trial. So in the present case. No rule of law is violated in allowing Bennett to allege and show that this release or writing was intended for his benefit, and that it was given for a consideration. Such evidence does not change the nature of the contract. It only shows the reason of its execution, and points out its use and application. But upon the case made in his bill, the appellee would have been entitled to relief, even if the written agreement to release the land from the judgment lien had been omitted to be stated. Lacroix and Bennett called on

Scott and informed him of the pending negotiation for the purchase of the land by Bennett, and of his refusal to purchase unless the lien of the judgment could be removed. Scott agreed to release the land from the incumbrance, thereby inducing Bennett to part with his money. This was a sufficient consideration to make the contract binding, an agreement which a Court of Equity must enforce. If it had been of no benefit to Scott, it was a disadvantage to Bennett, and this is all the law requires to constitute a consideration for a contract. It would be fraud on the part of Scott afterwards to attempt to enforce his lien, which in a Court of law or equity could not be tolerated. I speak now only of the case made by the bill; and we are of opinion, that whether the written agreement be in or out of it, the appellee, upon the facts presented, would be entitled to the relief he asks. The authorities cited upon this point have been examined. They are admitted to be law, and applicable to such a case as the counsel seems to have supposed this bill presented. But if we are correct in the views which we have given the subject, they have no bearing on the present question.

It is further contended by the counsel for the appellant, that if the release is a valid one and obligatory upon him, that it was made upon conditions upon the part of the appellee to be performed, with which he has not complied, and that this is shown by the answer of the appellant and the testimony of the witnesses of the appellee. The bill alleges that the conditions of the release were the purchase of the land by the appellee from Lacroix, and the payment of the money. It goes no farther. The answer admits that these were some of them, but avers that there was another, the agreement on the part of the appellee to pay the $500 note to the appellant; and that this condition was not performed. Whether this portion of the answer is strictly responsive to the bill, and as such, evidence in favor of the appellant, is a question of some doubt. We are inclined to the opinion that it is not. In the light in which we look upon this portion of the case, it is not material to decide this point.

Independent of the answer, we think that Bennett's an-

swer to the interrogatories of the appellant, and the testimony of both the witnesses, leave little room to doubt that the contract was, that this note was to be paid to the appellant, and not to Lacroix, and that this agreement constituted a portion of the consideration upon which he agreed to release his lien upon the land.  ·

All parties appear to have so understood it. The note, though payable to Lacroix, was given to Scott, and by him receipted for collection. The day after its date, Lacroix solicits Scott to permit Bennett to pay $100 of it to T. Harrison & Co. for his, (Lacroix's,) accommodation. Lacroix says distinctly, that it was the understanding between him and Scott, that Bennett was to pay the note to Scott, and when paid, Scott was to indorse it on his judgment. When Bennett paid the note, it was in Scott's hands, and he took an indemnity against any claim Scott might have against him on account thereof; and Lacroix in his testimony says that $20 was withheld by Bennett to defray the expenses of an anticipated suit with Scott. This is denied by Bennett in his answer to Scott's interrogatories. These are the principal circumstances attending the transaction of the payment of this note. In our judgment they show beyond any reasonable doubt, that the contract was as is contended by the appellant, and the appellee well understood that he was not acting in entire good faith in paying the note to Lacroix.

It is said that Scott voluntarily gave up the note to Bennett upon the presentation of his receipt which had been given for the same to Lacroix. Scott says he gave it up in ignorance of his rights. Upon this question there really is no evidence. Lacroix states nothing except what Bennett told him. It is of little consequence in what manner the possession was surrendered or obtained, unless from some circumstances we can reasonably infer that Scott assented to the payment having been made to Lacroix. There is nothing to satisfy us that such assent was given. On the contrary the facts appearing, and the conduct of the parties strongly induce the belief that it was withheld. It was not long after this transaction occurred, (the record does not show the time precisely,) that Scott re-asserted his right to

enforce his judgment lien upon the land. This was done by causing execution to be issued on the judgment on the 31st day of March, 1843.

Again, if the contract was as we have supposed is shown in evidence, the bare giving up the note by Scott to Bennett, after its payment to Lacroix, instead of raising the presumption that he thereby ratified and approved the act, and especially when taken ,in connexion with his subsequent conduct in issuing execution shortly afterwards upon his judgment, rather tends to prove the contrary. At all events, after a failure on the part of Bennett to fulfil the stipulations of the agreement, Scott was under no obligation to keep the note, and attempt by legal process to collect the same from Bennett, and would have been justified in issuing his execution for the collection, out of the land, of the sum due him upon the note, thus improperly, and as we must think, in violation of the contract, paid to Lacroix. To this extent we are of opinion, that the lien of the judgment ought still to operate. The contract has been in part executed in good faith. For a violation or departure in one particular we should not rescind it. We could not do so with justice to either party. But we think good conscience, equity and fair dealing, demand that we should permit the appellant to collect on execution to be issued on his judgment the sum due, as the balance of the five hundred dollar note, and interest to this time.

The decree of the Circuit Court of St. Clair county is reversed, and a decree entered in this Court that the appellee, Joseph Bennett, pay to the appellant, Joseph Scott, administrator of Samuel Scott, deceased, the sum of three hundred dollars, and six per cent. per annum interest thereon, from the 8th day of June, A. D. 1842, on or before the 1st day of August, A. D. 1847; and that in default of such payment, that the said appellant shall have execution upon the judgment in the bill of complaint in this case mentioned, to be levied upon the lands therein described, for the collection of the said sum of three hundred dollars and interest as aforesaid. And it is further ordered and decreed, that upon the

payment or collection of the said sum of three hundred dollars and interest as aforesaid by the said appellee, that the said appellant do make, execute and deliver to the said appellee a good and sufficient release, under seal, releasing and discharging said land from the lien of said judgment; and that the said appellant be thereafter forever perpetually enjoined and restrained from collecting any of the remaining portion of the said judgment out of the lands in the said bill described, and therein stated and mentioned as having been purchased by the said appellee of the said Rene M. Lacroix, and that each party pay one half the costs of this suit, both in this Court and the Court below.

Decree reversed.